**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JOHN T. REUTCKE,                    *
                                    *
        Plaintiff,                  *
                                    *
vs.                                 *    CIVIL ACTION NO.12-00475-CG-B
                                    *
SAM COCHRAN, et al.,                *
                                    *
        Defendants.                 *

### REPORT AND RECOMMENDATION

Plaintiff John T. Reutcke, a Mobile County Metro Jail ("jail") pretrial detainee proceeding pro se and in forma pauperis, filed a Complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After careful review, it is recommended that the claims for declaratory and injunctive relief be dismissed as moot, and the claims for compensatory and punitive damages be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. It is further recommended that the claims for nominal damages proceed in this action once Plaintiff has filed an amended complaint that complies with the pleading instructions contained herein. However, if plaintiff chooses not to pursue an action involving only nominal damages, his complaint is due to be dismissed in its entirety.

## I. Nature of Proceedings

### A. Complaint. (Doc. 1).

In this action, Plaintiff brings claims for lack of access to courts and for lack of adequate medical care while he was incarcerated at the jail. Plaintiff names as Defendants Sam Cochran, Sheriff of Mobile County, Alabama; Michael Haley, Warden at the jail; Medical Administrator at the jail for Corizon Health Care ("Corizon"); and Dr. Barrett, Medical Director at the jail. (Doc. 1 at 5, 7). For relief, Plaintiff seeks an order "allow[ing him] use of [the] law library and [requiring] medical to meaningfully care for [him, and] $10,000.00 per day for suffering as against each [Defendant] jointly." (Id. at 9). Since filing this action, Plaintiff has been transferred to another facility in Florida.[1] (Doc. 12).

Plaintiff alleges that on June 15, 2012,[2] he started representing himself in his criminal case in Mobile County. (Doc. 1 at 4). Plaintiff further alleges that in order to prepare for the grand jury and for trial, he requested access to the law library, and was told that there was no law library at the jail. (Id.). Plaintiff contends that this is "patently

---

[1] The address provided by Plaintiff, P.O. Box 7129, Milton, Florida 32572, is for the Santa Rosa County Jail according to its website. See http://www.santarosasheriff.org; (Doc. 13 at 1).

[2] May 15, 2012 is the date that Plaintiff arrived at the jail. (Doc. 8 at 6; Doc. 13 at 1).

illegal" and is "an infringement on [his] constitutional rights[,]" as he cannot "properly and meaningfully prepare[.]" (Id.).

In regard to his medical care claim, Plaintiff alleges that in the past year, he has undergone numerous lumbar, cervical and thoracic spine surgeries as well as a laparotomy. (Id.). When Plaintiff filed this action on July 17, 2012[3], he asserted that he "suffer[s with] a neurogenic bladder, no bowel control, . . . [his] right leg giv[ing] out at any given time, . . . [and] a 14.3 inch wound on [his] lumbar spine." (Id. at 5). Plaintiff maintains that he must use an "in/out dwelling catheter several times a day, . . . [and he has "been relegated to a wheelchair since last October [2011]." (Id. at 6). Nonetheless, Plaintiff was forced to sleep on the floor in a cell on the upper tier, but eventually he was given a steel bed. (Id.). Plaintiff also asserts that because he had fallen several times, he was given a walker to use by a health care provider after he had been at the

---

[3] Although Plaintiff's complaint was received by the Clerk's Office on July 25, 2012, it was executed on July 17, 2012. Per the mailbox rule, the earlier date controls. See Houston v. Lack, 487 U.S. 266, 271-72, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988); Adams v. United States, 173 F.3d 1339, 1340-41 (11th Cir. 1999); see also Vanderberg v. Donaldson, 259 F.3d 1321, 1325 n.4 (11th Cir. 2001) (in a section 1983 action, the court held that "this circuit considers notices of appeal, section 1983 complaints, Federal Tort Claims Act complaints, and section 2255 motions to vacate 'filed' when a pro se prisoner delivers one of them to a prison official for mailing.")

facility forty-one days. (Id.). Plaintiff further asserts that he "had numerous urine and bowel accidents" due to rarely being taken to be catheterized. (Id.). Plaintiff claims "the medical director and administrator are aware of this with seemingly no concern." (Id.).

Plaintiff argues that there is a "lack of appropriate medical housing, absolute needs [not] being met (catheter & adult diapers)[,] and grievous abuses of disabled person[s occurring]." (Id.). For example, Plaintiff contends that fifteen disabled inmates were sleeping on the floor, and that the Americans with Disability Act has been violated. (Id.).

In his claims, Plaintiff describes Defendants as acting in a supervisory capacity. Plaintiff alleges that Sheriff Cochran is "responsible for safe care of inmates at his jail[,] contracts [for] medical care[,] . . . . [and] allow[s] medical [personnel] to mistreat and cruelly handle inmates in his purv[iew.]" (Id. at 5). Plaintiff also asserts that Sheriff Cochran denied inmates access to a law library or law materials. (Id.).

With respect to Defendant Haley, Plaintiff asserts that as warden, Defendant Haley is supposed to uphold inmates' constitutional and legal rights; however, he denied Plaintiff access to adequate medical care and to legal materials on May

15, 2012. Plaintiff further asserts that Haley also "knowingly allowed gross overcrowding in medical unit [thereby] forcing extreme hardship on disabled person[s]." (Id.).

Turning to Defendants who provide medical care at the jail, Plaintiff asserts that he was not able to obtain a name for Defendant Medical Administrator for Corizon at the jail ("Administrator"), but that the Administrator was "willful[ly] and deliberate[ly] . . . negligen[t] by himself and his staff to [Plaintiff's] absolute medical needs[.]" (Id. at 8). According to Plaintiff, he "filed [a] grievance which [the Administrator] spoke to [him] about on June 6, 2012. [He] was assured of A) issuance of wheelchair, B) issuance of catheter[, and] C) chronic care [profile,] NONE of which . . . happened." (Id. at 8).

The other medical Defendant listed by Plaintiff is Dr. Barrett, Corizon's Medical Director at the jail. (Id. at 7). Plaintiff asserts that Barrett is responsible for the medical care at the jail and for his staff; however, he either allows or is negligent about the "total disregard of safety and care of medical inmates, specifically Plaintiff." (Id.). Plaintiff further asserts that due to Defendant Barrett and his staff, Plaintiff was "allowed . . . to fall numerous times [and] denied catheter care for 41 days[,] and [now Plaintiff] still only gets

occasional care." (Id.). Additionally, Plaintiff asserts that Defendant Barrett was aware that Plaintiff was forced to sleep on the floor and that the staff, including a nurse practitioner, do not follow his orders for Plaintiff to be catheterized three times daily and for Plaintiff to be housed on the lower level. (Id.).

**B. Answers to the Court's Interrogatories. (Doc. 8).**

Due to Plaintiff's failure to provide specific information and causal connections to Defendants in his description of his claims, Plaintiff was ordered to answer Court-generated interrogatories regarding his claims. (Doc. 6). Based on a review of Plaintiff's answers to the interrogatories, the Court discovered that Plaintiff was in fact represented by an attorney on the theft-by-deception charge that was pending against him, and that because he was not able to contact his attorney following the initial hearings on his criminal charge, he filed a motion for another attorney and sought access to a law library. (Doc. 8 at 2-3). According to Plaintiff, "Finally on 11/12/2012 plaintiff sent a letter and a motion to the Honorable George Hardesty to change [his] plea[] to guilty as was earlier stated due to she[e]r frustration." (Id. at 3).

With respect to Plaintiff's medical claim, he states that he was arrested on May 15, 2012 while he was in the Intensive

Care Unit at Springhill Memorial Hospital and taken to the medical wedge at the jail. (Id. at 6). According to Plaintiff, when he was arrested, he had had five lumbar spine surgeries in the past fourteen months and a 14.5 inch scar in the lumbar area, and could not "ambulate . . . without a quad cane [and] ha[d] debilitated to us[e] of a wheelchair (and a walker for extremely short distances)." (Id. at 6-7). Plaintiff alleges that he did not see a medical provider from May 15, 2012 to June 26, 2102, when he saw a nurse practitioner. (Id.). Plaintiff further asserts that he did not see Defendant Barrett until August 1, 2012. (Id.).

According to Plaintiff, on May 21, 2012, he was ordered to move from the lower tier and lower bunk to the upper tier where he was forced to sleep on the floor. (Id. at 8). Plaintiff states that he spoke with Nurse Simmons, Defendant Administrator, and Defendant Barrett about his right leg growing worse which was apparent by his right leg dragging and causing difficulty with walking.[4] (Id.). "[O]n July 31, 2012, plaintiff fell, re-injuring his back. For near[ly] (2) hours plaintiff was on floor in so[il]ed diapers[.] Finally he was taken to [the] clinic [and] cared for by Nurse Mike. Since this day

---

[4] Plaintiff states in his Motion for a Temporary Restraining Order that "[t]hrough no fault of the jail my right leg has depreciated markedly as a result of injury." (Doc. 9 at 2).

(07/31/2012) plaintiff has been in a wheelchair (w/c) using a
walker for very short distances." (Id.). Plaintiff complains
that door handles at the jail are positioned for a standing
person and are manual, which is "very painful for people with
fractures, or for [him] with major spinal damage." (Id. at 11).
And, his wheelchair does not fit through the cell door so he has
to rise, collapse the chair, and push it in, which has caused
him to fall twice. (Id.). "The medical administrator, Dr.
Barrett, [and] Nurse Simmons have caused Plaintiff suffering."
(Id. at 9). Furthermore, Plaintiff attached to his Answers a
copy of an Inmate Request Form, completed on September 23, 2012
(id. at 15), in which he stated that the wheelchair issued to
him on July 31, 2012 was taken and he was told that his family
should send his wheelchair. (Id.). He notes that they live in
Washington state and that his power chair was at the Mobile
Police Department because it was disallowed at the jail so he
was given a walker. (Id.). He complains that his jail-issued
wheelchair is constantly borrowed and not immediately returned.
(Doc. 9 at 1, 2, Doc. 10 at 1). And, on September 22, 2012, he
had missed being catheterized forty-seven times on account of
his difficulty getting to the clinic even though Captain
Stallworth said the logbook reflects that Plaintiff refused.
(Doc. 8 at 7).

## C.  Plaintiff's Motion to Amend, Etc.  (Doc. 7).

On November 30, 2012, Plaintiff filed a document titled "Motion Enlarge Action, Appoint Counsel[5], and Further Injunctive Relief" ("Motion to Amend"), in which he seeks to add as Defendants Warden Noah Price, Trey Oliver III, Corizon Medical Service, Nurse Simmons, Officer Rutland, and Sergeant Goode. (Doc. 7 at 2).  However, Plaintiff does not direct allegations against these Defendants, or provide details regarding his claims against them. (Id.).  Plaintiff requests declaratory relief and damages, namely $100,000 in compensatory damages, jointly and severally, and $250,000 in punitive damages, jointly and severally. (Id. at 3).  He also seeks "[a]ny further relief as [the] court deems appropriate[.]" (Id.).

## D.  Defendant Cochran's Response to TRO. (Doc. 13)

Plaintiff filed a motion for a temporary restraining order (Doc. 13) to obtain an order to keep Defendants from taking his

---

[5] Plaintiff's request for appointment of counsel is **DENIED**. (Doc. 7).  The undersigned finds, from a review of Plaintiff's complaint and other filings, that he is able to adequately articulate the facts and grounds for relief in the instant matter without notable difficulty.  Furthermore, the court concludes that Plaintiff's complaint is not of undue complexity and that he has not shown that there are exceptional circumstances justifying appointment of counsel. See Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993); Dean v. Barber, 951 F.2d 1210, 1216 (11th Cir. 1992); see also Fowler v. Jones, 899 F.2d 1088, 1096 (11th Cir. 1990).  Therefore, Plaintiff's request for appointment of counsel (doc. 7) is **DENIED**.

wheelchair unless they returned it in fifteen minutes.
Plaintiff asserted that his wheelchair was being taken from him
in retaliation for having filed this action. (Doc. 9 at 2). In
response to Plaintiff's motion, Defendant Cochran informed the
Court that Plaintiff was arrested on May 15, 2012[6] for theft by
deception, to which he pled guilty on May 16, 2013. (Doc. 13 at
1; Doc. 13-1 at 4). The basis for the charge was that Plaintiff
sought and received medical services even though he was not sick
or injured. (Id.). On June 5, 2013, Plaintiff was transferred
to Florida authorities after he waived extradition. (Doc. 13).

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding in forma pauperis, the
Court is reviewing his Complaint (doc. 1) under 28 U.S.C.
§ 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be
dismissed as "frivolous where it lacks an arguable basis in law
or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct.
1827, 1831-32, 104 L. Ed. 2d 338 (1989). A claim is frivolous
as a matter of law where, inter alia, the defendants are immune
from suit, id., 490 U.S. at 327, or the claim seeks to enforce a
right that clearly does not exist. Id.

---

[6] The response and supporting affidavit indicates that
Plaintiff was arrested on May 15, 2013; however, the AlA Court
records reflect that Plaintiff was arrested on May 15, 2012.
(Doc. 13-1 at 4).

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 555, 557 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. Jones v. Bock, 549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 595-596, 30 L. Ed. 2d 652 (1972). The court, however, does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." GJR Investments v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Randall v. Scott, 610 F.3d 791, 710 (11th Cir. 2010) (relying on Iqbal, 556 U.S. 662). Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. Iqbal, 556 U.S. at 681. In addition, a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

**III. Discussion.**

**A. Applicability of 42 U.S.C. § 1997e(e).**

"In an effort to stem the flood of prisoner lawsuits in federal court, Congress enacted the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA")." Harris v. Garner, 216 F.3d 970, 971 (11th Cir.), cert. denied, 532 U.S. 1065 (2001). Included in the PLRA is 42 U.S.C. §

1997e(e), which provides:

> No Federal civil action may be brought by a
> prisoner confined in a jail, prison, or other
> correctional facility, for mental or
> emotional injury suffered while in custody
> without a prior showing of physical injury.

42 U.S.C. § 1997e(e). For the purposes of this section, a prisoner is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997(h). Plaintiff identifies himself as a pretrial detainee when his claims arose, and his pleadings indicate when he filed this action, he was incarcerated at the local jail. (Doc. 1). Thus, the Court concludes that Plaintiff meets the definition of a prisoner under this section.

Section 1997e(e) is "[r]ead as a limitation on a damages remedy only[.]" Harris v. Garner, 190 F.3d 1279, 1288 (11th Cir. 1999) (finding that the Constitution does not "mandate[ ] a tort damages remedy for every claimed constitutional violation"), opinion vacated by 197 F.3d 1059, opinion reinstated in part by 216 F.3d 970 (11th Cir. 2000). By enacting § 1997e(e), "Congress has chosen to enforce prisoners' constitutional rights through suits for declaratory and injunctive relief, and not

13

through actions for damages." Id., 190 F.3d at 1289.  This section "applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2002), cert. denied, 540 U.S. 1112 (2004).  The statute's clear and broad language encompasses all claims, including constitutional claims, and provides for no exceptions. Al-Amin v. Smith, 637 F.3d 1192, 1197 (11th Cir. 2011).  Moreover, no distinction is made between "constitutional claims frequently accompanied by physical injury (e.g., Eighth Amendment violations) and those rarely accompanied by physical injury (e.g., First Amendment violations)[;]" all constitutional claims are treated equally. Id.

**B. Declaratory and Injunctive Relief Claims.**

In the present action, Plaintiff has requested an order "allow[ing him] use of [the] law library and [requiring] medical to meaningfully care for [him, and] $10,000.00 per day for suffering[.]" (Doc. 1 at 9).  The requests for an order to have access to a law library and to receive meaningful medical care are requests for injunctive relief.  And in the Motion to Amend, Plaintiff requests a "declaratory judgment" in the form of an order requiring Defendant Cochran to create a plan for assuring meaningful access to courts and for Defendants Corizon,

Administrator, and Barrett to correct and create procedures to assist Plaintiff and others so they receive adequate medical care, including ADA required housing. (Doc. 7 at 3). Even though claims for declaratory and injunctive relief are allowed to proceed according to 42 U.S.C. § 1997e(e), they become moot when an inmate is transferred to another institution, and are then subject to dismissal. Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988), cert. denied, 488 U.S. 1046 (1989) ("Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." (quotation omitted)).

In Spears, an Alabama prison inmate complained about West Jefferson's administrative segregation's conditions of confinement being worse than other facilities. After filing his complaint, the inmate was transferred from West Jefferson to another facility with more favorable conditions. As a result, the inmate's claims for injunctive and declaratory relief were found to be moot and were subject to dismissal. Id., 846 F. 2d at 1328; see also Hathcock v. Cohen, 287 F. App'x 793, 798 (11th Cir. 2008) (unpublished) (finding that the pretrial detainee's claims for injunctive and declaratory relief became moot upon

his transfer to the department of corrections).[7]

With respect to Plaintiff's claims for declaratory and injunctive relief, they have become moot by his transfer away from the conditions to which he was subjected at the Mobile Metro jail. Thus, Plaintiff's claims for access to courts, albeit a law library, and to meaningful medical care at the jail are due to be dismissed without prejudice as moot.

**C. Claims for Nominal Damages.**

Turning to Plaintiff's request for damages, he states that he wants $10,000 a day for his "suffering." (Doc. 1 at 9). In the Complaint, Plaintiff does not specify the type of damages that he is seeking, i.e., nominal, compensatory, or punitive. (Doc. 1 at 1). However, in his Motion to Amend (Doc. 7), he specifically requests $100,000 in compensatory damages from each Defendant and $250,000 in punitive damages from each Defendant. (Doc. 7 at 3). He also asks for further relief that the Court deems appropriate. (Id.).

Under § 1997e(e), a claim for nominal damages may proceed, but if the claim were successful, the amount to be awarded would be only nominal. (Doc. 1 at 9). The amount of $10,000.00, however, is not considered to be a request for nominal damages.

---

[7] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2(2005).

See Carey v. Piphus, 435 U.S. 247, 266-67, 98 S. Ct. 1042, 1053-54, 55 L. Ed. 2d 252 (1978) (holding if plaintiffs were entitled to nominal damages for the mere violation, the damages should not exceed one dollar); Kyle v. Patterson, 196 F.3d 695, 697 (7th Cir. 1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury."); Qualls v. Santa Rosa County Jail, Case No. 3:10cv54/MCR/MD, 2010 U.S. Dist. LEXIS 19469, * 8 n.1, 2010 WL 785646, *3 n.1 (N.D. Fla. Mar. 4, 2010) (unpublished) (dismissing the plaintiff's complaint as it "cannot be liberally construed as requesting nominal damages, because he specifically requested only $250,000 in compensatory and/or punitive damages"); Partain v. Walker, Case No. 5:10-CV-116 (CAR), 2010 U.S. Dist. LEXIS 41707, *4, 2010 WL 1740775, *1 (M.D. Ga. Apr. 28, 2010) (unpublished) (finding that inmate's request for $1000 for every exercise hour that he did not go outside and $10,000 for each day that he went outside in shackles were not requests for nominal damages); Harrison v. Myers, Case No. 10-0566-KD-N, 2011 U.S. Dist. LEXIS 82738, *19-20, 2011 WL 3204372, *7 (S.D. Ala. July 13, 2011) (unpublished) (finding that the prisoner's request of $2,500 was not for nominal damages inasmuch as nominal damages implies a mere token or trifling); In re Bayside Prison Litigation, Case No. 09-

2365(RBS/JS), 2010 U.S. Dist. LEXIS 124624, *20, 2010 WL 4916716, at *4 (D.N.J. Nov. 23, 2010) (unpublished) (finding that "$2,000.00 surely surpasses the limit of what constitutes a 'minimal' amount of compensation by any definition of the term 'nominal'"). Accordingly, the Court finds that Plaintiff's damages request for $10,000 is not for nominal damages.

However, when confronted with a general, open-ended request for relief, which does not request or preclude a claim for nominal damages, such as the request found in the Motion to Amend, courts have liberally construed the request to be one for nominal damages. Boxer X v. Donald, 169 F. App'x 555, 559 (11th Cir. 2006) (unpublished); Frazier v. McDonough, Case No. 3:07cv273/LAC/MD, 2008 U.S. Dist. LEXIS 59104, *2, 2008 WL 3050393, at *1 (N.D. Fla. Aug. 1, 2008) (unpublished). Thus, Plaintiff may proceed on a claim for nominal damages in this action. Therefore, Plaintiff is granted the opportunity to file an amended complaint that clearly sets forth his request for nominal damages within the time period for filing an objection to this report and recommendation (14 days after being served a copy of this Report and Recommendation).

In order to file this amended complaint, Plaintiff must complete the Court's § 1983 complaint form in its entirety. The allegations are to be limited to the issues presented in the

complaint. Plaintiff must clearly describe how each named Defendant is involved in each alleged constitutional violation, including the specific dates of the alleged unconstitutional acts. It is important that Plaintiff clearly set out, in detail, the facts relating to each Defendant because in civil rights cases, more than conclusory and vague allegations are required to state a claim. Iqbal, 556 U.S. at 678; Fullman v. Graddick, 730 F.2d 553, 556-57 (11th Cir. 1984). And a plaintiff must causally connect a Defendant's actions, omissions, customs or policies to a deprivation of his constitutional rights in order to state a claim under § 1983. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). The amended complaint must contain all of his allegations because the amended complaint will supersede the original Complaint and his other filings; therefore, Plaintiff no longer can rely on them. Fritz v. Standard Life Ins. Co., 676 F.2d 1356, 1358 (11th Cir. 1982). Plaintiff shall not file a memorandum of law, cite to cases or statutes, or file exhibits as evidentiary support for his amended complaint. Nor does Plaintiff need to include allegations about his mental or emotional injuries connected to Defendants' action because nominal damages are only awarded upon a successful showing of a violation of the Constitution.

**D. Claims for Compensatory and Punitive Damages.**

The remaining types of damages are compensatory and punitive damages. In his complaint, Plaintiff does not identify the type of damages he is seeking. Instead, he merely states that he is seeking a recovery for his "suffering." (Doc. 1 at 9). However, in his motion to amend, Plaintiff requests compensatory and punitive damages. (Doc. 7 at 3).

In his complaint, Plaintiff does not provide any facts or details to accompany his lone assertion of "suffering." The "suffering" language thus appears to be a generalized term based on his experiences at the jail. This term is in contrast to a recovery for a specific injury, e.g., a broken arm for which a recovery is sought. Indeed, an examination of Plaintiff's allegations does not reflect a concrete, specific physical injury he is alleged to have suffered. Rather, Plaintiff mentions numerous conditions or situations that were not to his liking.

The only allegation that even approaches the description of a specific physical injury concern Plaintiff's assertion that he fell at different times and then re-injured his back after one of the falls on July 31, 2012. (Doc. 8 at 8). This allegation of a re-injury is the closest that Plaintiff comes to a description of a physical injury that did not exist *prior* to his

incarceration. However, no information is provided about the injury except that Plaintiff's back was re-injured, he could not immediately get up, and "since that day he has been in a wheelchair (w/c) using a walker for very short distances." (Id. at 8).

Plaintiff alleges that since his July 31, 2012 fall, which occurred *after* he filed this action on July 25, 2012, he has been using a wheelchair except for short distances when he uses a walker. However, Plaintiff's reliance on a wheelchair and a walker to this degree is not distinguished from his use of them *prior* to the July 31, 2012 fall. Based on Plaintiff's allegations, it appears that his reliance on a wheelchair and a walker is similar, if not the same, as before. That is, in his complaint, Plaintiff dwells on the terrible condition of his back when he arrived at the jail, and in his answers to the interrogatories, he provides more details, i.e., he had five spinal surgeries within fourteen months (Doc. 8 at 6-7), and when he was arrested, he could not ambulate without a quad cane and had "debilitated" to using a wheelchair and a walker for short distances. (Id.). He also stated that he had been relegated to using a wheelchair since October 2011. (Doc. 1 at 6). Plaintiff also noted in his complaint that his right leg gives out at anytime (Doc. 1 at 5), and then in his answers to

the interrogatories, he adds that it had grown worse, which resulted in him dragging it *prior* to the fall when he reinjured his back. (Doc. 8 at 8).

Plaintiff's allegations are noted more for the absence of a specific physical injury.  Despite the Court's attempt to find a physical injury that can be distinguished from Plaintiff's *prior* impaired physical condition, which arose at the jail and which can be attributed to a Defendant, the Court has been unable to find a specific physical injury suffered by Plaintiff, much less an injury that is greater than de minimis.

Due to the lack of information, the Court construes Plaintiff's "suffering" to be a claim for mental or emotional injuries.  In order to recover for "a mental or emotional injury suffered," Plaintiff must show that he suffered a physical injury that is greater than de minimis. See Harris v. Garner, supra, 190 F.3d at 1286 ("We therefore join the Fifth Circuit in fusing the physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson [v. McMillian, 503 U.S. 1 (1992)] for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment, and hold that in order to satisfy section 1997e(e) the physical injury must be more than de minimis, but need not be significant."); Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309,

1312 (11th Cir. 2002) (holding physical injuries must be more than de minimis); see, e.g., Harris, 190 F.3d at 1286-87 (finding a "dry shave" was not a physical injury that was more than de minimis; Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010), cert. denied, 131 S. Ct. 517 (2010) (finding that "the injuries that [plaintiff] complains of - including the vague injuries to his back, the scrapes and marks on his knees and legs, the lack of personal items, the lapse of time in reordering medication, the window - cleaning assignment, and the discontinuance of his pass for showers twice a day - amount to de minimis physical injuries" thereby barring damages for mental anguish and suffering); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (finding that a bruised ear which lasted for three days was de minimis); Mobley v. Grasco, No. 5:11cv170/SPM/EMT, 2011 U.S. Dist. LEXIS 81136, *7, 2011 WL 3163159, *2 (N.D. Fla. July 1, 2011) (finding the claim of "pain and suffering" did not allege an injury); Osterback v. Johnson, 2003 U.S. Dist. LEXIS 25987, *8, 2003 WL 25571396, *6 (M.D. Fla.), aff'd, 112 F. App'x 4 (11th Cir. 2004) (finding that the plaintiff's "slight weight loss (11 pounds), nausea, back pain, a sinus condition, appetite loss and headaches allegedly 'exacerbated by the poor living conditions'" did not satisfy § 1997e(e)'s physical injury requirement).

Considering that other courts have determined that some back injuries were not greater than de minimis, this Court concludes that, as pled, Plaintiff has not specified a physical injury connected to his "suffering," much less one that is greater than de minimis. That is, taking Plaintiff's allegations as true and construing them in the light most favorable to him, Plaintiff's allegations in his complaint and in his answers to the interrogatories do not contain information that permits the Court to conclude that Plaintiff pled a plausible injury that would satisfy the injury requirement of 42 U.S.C. § 1997e(e) in order to state a claim for compensatory and punitive damages. See Stephenson v. Ellis, No. 3:11 cv418/MCR.CJK, 2013 U.S. Dist. LEXIS 41334, *8, 2013 WL 1197723, *2 (N.D. Fla. Jan. 25, 2013) (finding that the plaintiff failed to state a plausible claim for compensatory and punitive damages). Accordingly, the Court finds that Plaintiff's compensatory and punitive damages claims are due to be dismissed without prejudice for failure to state a claim upon which can be granted. See Harris, 216 F.3d at 980 ("[D]ismissal under this statutory provision of a claim that is filed during confinement should be without prejudice to re-filing the claim if and when the plaintiff is released.").

**IV. Conclusion.**

Based upon the foregoing reasons, it is recommended that Plaintiff's claims for declaratory and injunctive relief be dismissed as moot, and that his claims for compensatory and punitive damages be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. It is further recommended that Plaintiff's claims for nominal damages proceed in this action once Plaintiff has filed an amended complaint that complies with the pleading instructions contained herein. However, if Plaintiff chooses not to pursue an action involving only nominal damages, his complaint should be dismissed in its entirety.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed

determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **21st** day of **August, 2013.**

**/s/ Sonja F. Bivins**
**UNITED STATES MAGISTRATE JUDGE**
